NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

ARACELIS CABRERA         Civil Action No. 13-5682 (SDW)

                Plaintiff,

v.

CAROLYN W. COLVIN,         **OPINION**
COMMISSIONER OF SOCIAL SECURITY,

                Defendant.         December 1, 2015

**WIGENTON,** District Judge.

Before the Court is Plaintiff Aracelis Cabrera's ("Plaintiff" or "Cabrera") appeal of the final administrative decision of the Commissioner of Social Security ("Commissioner") that she is not disabled under section 1614(a)(3)(A) of the Social Security Act (the "Act"). This appeal is decided without oral argument pursuant to Federal Rule of Civil Procedure 78. This Court has subject matter jurisdiction pursuant to 42 U.S.C. § 405(g). Venue is proper under 28 U.S.C. § 1391(b). For the reasons set forth below, this Court **AFFIRMS** the Commissioner's decision.

I.      PROCEDURAL AND FACTUAL HISTORY

    A. Procedural History

On February 3, 2009, Plaintiff applied for Supplemental Security Income Benefits ("SSIB") (R. 96), alleging disability as of February 21, 2008, due to "[p]anic disorder, phobia, bad nerves, asthma, osteoarthritis in arms, shoulder and back, heel spurs." (R. 105.) Plaintiff's application for SSIB was denied both initially and upon reconsideration. (R. 41–42.) Plaintiff's

subsequent request for a hearing before an administrative law judge ("ALJ") was granted, and a hearing was held before ALJ Richard L. De Steno ("ALJ De Steno") on October 4, 2011. (R. 27–40.) Plaintiff appeared and testified at the hearing. (R. 29–39.) On October 20, 2011, ALJ De Steno issued a decision finding Plaintiff was not disabled and denying her application for disability benefits. (R. 12–23.) On July 29, 2013, the Appeals Council denied Plaintiff's request for review of ALJ De Steno's October 20, 2011 decision, making it the Commissioner's final decision. (R. 1–5.) Plaintiff now seeks reversal of ALJ De Steno's decision and asks this Court to grant her SSIB, or in the alternative, to vacate the final decision and remand the case for a further hearing. (Compl. 2.)

### B. Factual History

#### 1. Personal and Employment History

Plaintiff was 46 years old at the time of ALJ De Steno's decision in 2011. (R. 29.) She completed ninth grade and, as of 2011, claimed to be "working on" obtaining her GED. (R. 30.) She has previously worked as a clerk/receptionist, temp, and cashier, (R. 130) however her last significant employment occurred in 1990. (R. 30, 130.)

#### 2. Medical History

The record reflects that numerous medical doctors and healthcare practitioners examined Plaintiff in relation to her disability claim. (R. 166–252.) In addition, Plaintiff testified about her health during the hearing before ALJ De Steno. (R. 29–39.) The following is a summary of the medical evidence:

Plaintiff alleged in her original "Disability Report" that she is unable to work due to both psychiatric and physical ailments. (R. 104–05.) Specifically, Plaintiff contends that she suffers

from "[p]anic disorder, phobia, bad nerves, asthma," heel spurs, and osteoarthritis in her arms, shoulder and back. (R. 105.)

Plaintiff sought treatment from John D'Aconti, M.D. ("Dr. D'Aconti") approximately eleven times from November 14, 2005 through November 17, 2009. (R. 199–217.) After conducting various lab tests, Dr. D'Aconti diagnosed Plaintiff with osteopenia and "borderline osteoporosis of the left hip with osteoporosis at the femoral neck." (R. 205.) Dr. D'Aconti's diagnosis remained unchanged throughout his treatment of Plaintiff. (R. 199–217.)

Susan Hagen Morrison, M.D. ("Dr. Morrison") completed a "Consultation Report" on June 18, 2007 in which she diagnosed Plaintiff with allergic rhinitis and conjunctivitis, osteopenia (by history), anxiety (by history), bronchial hyper-reactivity/bronchitis (by history), possible hypertension and a drug allergy to sulfa. (R. 166–67.) Dr. Morrison recommended Plaintiff receive Optivar, Advair, Clarinex, Albuterol MDI, Singulair, and a tetanus vaccine. (R. 167.)

Plaintiff visited Clara Maass Medical Center ("Maass Medical") on September 5, 2007. (R. 169.) Maass Medical's records show that Plaintiff exhibited "mild painful distress," and that she was alert and awake. (R. 170.) Physician Shankar Santhanam ("Santhanam") ultimately diagnosed Plaintiff with tendonitis in her elbow and shoulder muscle spasms, and prescribed her Naprosyn and Flexiril. (R. 171.) Plaintiff again visited Maass Medical on January 26, 2009. (R. 174–76.) During this visit, Michael Eagan, M.D. ("Dr. Eagan") treated Plaintiff for "bilateral ear pain and cough," for which she received strep throat treatment. (*Id.*)

Dr. D'Aconti referred Plaintiff to Edwin Gangemi, M.D. ("Dr. Gangemi"), who treated her on October 6, 2008. (R. 172–73.) Upon physical examination, Dr. Gangemi reported that Plaintiff was "fully oriented to time, place, and person and was in no obvious discomfort [and]

3

[s]he walked with normal gait." (R. 172.) Despite Plaintiff's complaints of persistent pain, Dr. Gangemi found that Plaintiff had full range of shoulder, neck, and elbow movements. (R. 172–73.) She also had no restriction in wrist or finger movements. (R. 173.) He found "mild supraspinatus tenderness" in Plaintiff's shoulders and no tenderness in her elbows. (R. 172–73.) Dr. Gangemi gave Plaintiff anti-inflammatory medicine and referred her to physical therapy to help with the shoulder and elbow discomfort. (R. 173.) Lastly, Dr. Gangemi ruled out inflammatory arthropathy. (*Id.*)

Plaintiff received psychiatric treatment at Mount Carmel Guild Behavioral Healthcare ("Mount Carmel") from December 3, 2008 through February 27, 2009. (R. 177–93.) Upon Plaintiff's final Bio-Psycho-Social Assessment and Psychiatric Evaluation at Mount Carmel on February 27, 2009, she was diagnosed with major depressive disorder, recurrent, without psychotic features, asthma, osteoporosis, financial issues and social isolation. (R. 177.) Throughout her evaluations, Plaintiff was described as "depressed, unable to sleep, [subject to] crying spells, overwhelmed, stressed, angry/irritable and [experiencing] mood swings." (R. 181.)

A Medical Source Statement from Priscilla Young, APRN, BC, NP ("Dr. Young") dated November 26, 2009 indicates that Plaintiff is "Markedly Limited" in her ability to complete the following work-related qualities: understand, remember and carry out detailed instructions; sustain attention and concentration in an eight-hour work day; perform activities, maintain regular attendance, and respond quickly and appropriately when a problem arises; complete a normal eight hour day without interruptions caused by psychological symptoms and perform on a consistent pace without unreasonably lengthy breaks; interact appropriately around the general public; understand instructions and respond appropriately to criticism from supervision; get

along with co-workers and supervision without getting distracted or emotionally unstable; and respond appropriately and quickly to changes in a work setting. (R. 250–51.)

Kim Arrington, Psy. D. ("Dr. Arrington") conducted a consultative review of Plaintiff on June 17, 2010. (R. 218–21.) In the review, Dr. Arrington administered a mental status examination to Plaintiff. (R. 219–220.) Dr. Arrington summarized her findings as follows:

> With regard to the daily functioning of the claimant, she is able to follow and understand simple directions and instructions. Her attention and concentration appear to fluctuate. She is struggling with the motivation to perform simple tasks. She will have difficulty learning new tasks and performing complex tasks independently. She will need support to maintain a regular schedule. Her difficulties appear attributable to mood fluctuations and anxiety. The results of the present evaluation appear to be consistent with psychiatric problems, which may significantly interfere with [Plaintiff's] ability to function on a daily basis.

(R. 220.) Dr. Arrington then diagnosed Plaintiff with bipolar II disorder, obsessive-compulsive disorder, back pain, high cholesterol, sleep apnea, anemia, narrowing of arteries in neck, osteoarthritis, and asthma. (*Id.*) Lastly, Dr. Arrington recommended that Plaintiff re-enter psychiatric treatment and provided a "guarded" prognosis. (R. 220–21.)

Justin Fernando, M.D. ("Dr. Fernando") and Samuel Wilchfort, M.D. ("Dr. Wilchfort") provided an orthopedic consultative report dated July 27, 2010. (R. 222–27.) After conducting a physical examination, Dr. Fernando diagnosed Plaintiff with osteoporosis, painful joints, and chest pain. (R. 223.) Dr. Fernando opined that "[i]t is possible given [Plaintiff's] symptoms of pain in weightbearing [sic] areas of her body coupled with the fact she has osteoporosis and weighs in excess of 200 pounds while she stands at 5 feet 2 inches could be causing difficulties with weightbearing and walking." (R. 224.) Dr. Wilchfort's report indicated that Plaintiff is able to walk at a reasonable pace and experiences severe muscle weakness on both sides of her body. (R. 227.)

5

A psychiatric review technique report dated July 28, 2010 from Herman Huber, Ph.D. ("Dr. Huber") provided that due to Plaintiff's affective disorders, Plaintiff has moderate restrictions of activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence or pace. (R. 230.) Dr. Huber also stated that Plaintiff experienced zero episodes of decompensation of extended duration. (*Id.*) Dr. Huber additionally completed a Mental Residual Capacity Assessment ("Mental Assessment") on July 28, 2010. (R. 231–34.) In the Mental Assessment, Dr. Huber reported that Plaintiff's ability to understand, remember, and carry out detailed instructions is "Markedly Limited." (R. 231.) All of Plaintiff's other abilities were either "Moderately Limited" or "Not Significantly Limited," with the majority of Plaintiff's abilities being "Not Significantly Limited." (R. 231–34.)

Nikolaos Galakos, M.D. ("Dr. Galakos") conducted a Physical Residual Functional Capacity Assessment ("Physical Assessment") of Plaintiff on August 10, 2010. (R. 235–42.) Dr. Galakos's primary diagnosis of Plaintiff was osteoporosis/low back pain. (R. 235.) He also found that Plaintiff could occasionally lift or carry twenty pounds, frequently carry ten pounds, sit for about six hours in an eight-hour workday, and could push and pull with no restrictions. (R. 236.) Furthermore, Dr. Galakos reported that Plaintiff could occasionally climb ramps and stairs, balance, stoop, kneel, crouch, and crawl, but that Plaintiff could never climb ladders, ropes or scaffolds. (R. 237.)

Damien Natalio, M.D. ("Dr. Natalio") conducted MRIs on Plaintiff's cervical spine and lumbar spine on February 13, 2011. (R. 246–48.) The cervical spine MRI revealed "small posterior ridges with central disc herniations at C4/5 and C6/7 impressing on the anterior thecal sac and narrowing the neural foramina at these levels." (R. 246.) Dr. Natalio also noted

"impingement of the left sided exiting nerve root at C6/7." (*Id*.) The cervical spine MRI additionally found "small posterior ridges with disc bulging at C5/6 impressing on the anterior thecal sac and narrowing the neural foramina at these levels." (*Id*.) The lumbar spine MRI revealed "central and right sided subligamentous disc herniations at L4/5 and L5/S1 moderately impressing on the anterior thecal sac and narrowing the right lateral recess at these levels." (R. 247.)

### 3. Function Reports

In a self-function report dated March 6, 2009, Plaintiff stated that on a daily basis she wakes up, makes breakfast and coffee, takes care of household chores such as cleaning and laundry, prepares dinner, showers, and takes care of her daughter. (R. 136–38.) She also stated that she goes outside approximately once a week where she either walks or uses public transportation. (R. 139.) She shops for food, clothing and necessities but is unable to save money. (*Id*.) Plaintiff further stated that she enjoys watching television, reading and being with her daughter, talking on the phone/computer with others once a week and regularly attends church. (R. 140.) Lastly, Plaintiff self-reported that she has trouble with mobility, and can only walk a block before needing to rest for five to ten minutes. (R. 141.) Plaintiff's daughter also submitted a third-party function report on March 6, 2009 in which she corroborated Plaintiff's self-report. (R. 144–51.)

### 4. Hearing Testimony

At the hearing conducted by ALJ De Steno on October 4, 2011, Plaintiff testified about her education, previous employment, medical ailments and treatments, and daily activities. (R. 29–39.) Plaintiff testified that she can only sit or stand for ten minutes at a time and is unable to lift any amount of weight. (R. 34–35.) Plaintiff also testified about a car accident that occurred

in September of 2010. (R. 32.) She stated that she was a passenger in a cab and sustained injuries resulting in back pain. (*Id*.) Plaintiff also claimed that the police were called and an ambulance escorted her to a hospital, where she was discharged the same day. (R. 36–37.) However, the only medical evidence of record after September of 2010 is the MRI impressions from March 13, 2011, and those records make no mention of a car accident sustained by Plaintiff. (R. 246–48.) A vocational expert did not testify at the hearing before ALJ De Steno.

## II.   LEGAL STANDARD

### A. Standard of Review

In Social Security appeals, this Court has plenary review of the legal issues decided by the Commissioner. *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000). Yet, this Court's review of the ALJ's factual findings is limited to determining whether there is substantial evidence to support those conclusions. *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal citation and quotations omitted).

Substantial evidence is "less than a preponderance of the evidence, but 'more than a mere scintilla'; it is 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bailey v. Comm'r of Soc. Sec.*, 354 F. App'x. 613, 616 (3d Cir. 2009) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Importantly, "[t]his standard is not met if the Commissioner 'ignores, or fails to resolve, a conflict created by countervailing evidence.'" *Bailey*, 354 F. App'x. at 616 (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)). However, if the factual record is adequately developed, "'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding

8

from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 4:08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). "The ALJ's decision may not be set aside merely because [a reviewing court] would have reached a different decision." *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x. 475, 479 (3d Cir. 2007) (citing *Hartranft*, 181 F.3d at 360). This Court is required to give substantial weight and deference to the ALJ's findings. *See Scott v. Astrue*, 297 F. App'x. 126, 128 (3d Cir. 2008). Nonetheless, "where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination." *Cruz*, 244 F. App'x. at 479 (citing *Hargenrader v. Califano*, 575 F.2d 434, 437 (3d Cir. 1978)).

In considering an appeal from a denial of benefits, remand is appropriate "'where relevant, probative and available evidence was not explicitly weighed in arriving at a decision on the plaintiff's claim for disability benefits.'" *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (quoting *Saldana v. Weinberger*, 421 F. Supp. 1127, 1131 (E.D. Pa. 1976)). Indeed, a decision to "award benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits." *Podedworny v. Harris*, 745 F.2d 210, 221–22 (3d Cir. 1984) (citations omitted).

### B. The Five–Step Disability Test

A claimant's eligibility for social security benefits is governed by 42 U.S.C. § 1382. An individual will be considered disabled under the Act if the claimant is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" lasting continuously for at least twelve months. 42 U.S.C. § 423(d)(1)(A). The impairment must be severe enough to render the individual "not only unable to do his previous

9

work but [unable], considering his age, education, and work experience, [to] engage in any kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). A claimant must show that the "medical signs and findings" related to his or her ailment have been "established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged . . . . " 42 U.S.C. § 423(d)(5)(A).

To make a disability determination, the ALJ follows a five-step sequential analysis. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see also Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 480 (3d. Cir. 2007). If the ALJ determines at any step that the claimant is or is not disabled, the ALJ does not proceed to the next step. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

Step one requires the ALJ to determine whether the claimant is engaging in substantial gainful activity ("SGA"). 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). SGA is defined as work that "[i]nvolves doing significant and productive physical or mental duties . . . for pay or profit." 20 C.F.R. §§ 404.1510, 416.910. If the claimant engages in SGA, the claimant is not disabled for purposes of receiving social security benefits regardless of the severity of the claimant's impairments. *See* 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If the individual is not engaging in SGA, the ALJ proceeds to step two.

Under step two, the ALJ determines whether the claimant suffers from a severe impairment or combination of impairments that meets the duration requirement found in Sections 404.1509 and 416.909. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). An impairment or a combination of impairments is not severe when medical and other evidence establishes only a slight abnormality or combination of abnormalities that would have a minimal effect on an

individual's ability to work. 20 C.F.R. §§ 404.1521, 416.921; SSR 85-28, 96-3p, 96-4p. An impairment or a combination of impairments is severe when it significantly limits the claimant's "physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1520(c), 416.920(c). If a severe impairment or combination of impairments is not found, the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If the ALJ finds a severe impairment or combination of impairments, the ALJ then proceeds to step three.

Under step three, the ALJ determines whether the claimant's impairment or combination of impairments is equal to, or exceeds, one of those included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If an impairment or combination of impairments meets the statutory criteria of a listed impairment as well as the duration requirement, the claimant is disabled and entitled to benefits. 20 C.F.R. §§ 404.1520(d), 416.920(d). If, however, the claimant's impairment or combination of impairments does not meet the severity of the listed impairment, or if the duration is insufficient, the ALJ proceeds to the next step.

Before undergoing the analysis in step four, the ALJ must determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(a), 404.1520(e), 416.920(a), 416.920(e). An individual's RFC is the individual's ability to do physical and mental work activities on a sustained basis despite limitations from his or her impairments. 20 C.F.R. §§ 404.1545, 416.945. The ALJ considers all impairments in this analysis, not just those deemed to be severe. 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2); SSR 96-8p. After determining a claimant's RFC, step four then requires the ALJ to determine whether the claimant has the RFC to perform the requirements of his or her past relevant work. 20 C.F.R. §§ 404.1520(e)-(f), 416.920(e)-(f). If the claimant is able to perform his or her past relevant work, he or she will not

be found disabled under the Act. 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1520(f), 416.920(a)(4)(iv), 416.920(f). If the claimant is unable to resume his or her past work, the disability evaluation proceeds to the fifth and final step.

At step five, the ALJ must determine whether the claimant is able to do any other work, considering his or her RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). Unlike in the first four steps of the analysis where the claimant bears the burden of persuasion, the burden shifts to the ALJ at step five to determine whether the claimant is capable of performing an alternative SGA present in the national economy. 20 C.F.R. §§ 404.1520(g)(1) (citing 404.1560(c)), 416.920(g)(1) (citing 416.960(c)); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987). At this point in the analysis, the SSA is "responsible for providing evidence that demonstrates that other work exists in significant numbers in the national economy that [the claimant] can do, given [the claimant's RFC] and vocational factors." 20 C.F.R. §§ 404.1560(c)(2), 416.960(c)(2). If the claimant is unable to do any other SGA, he or she is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III. DISCUSSION

At step one of the disability analysis, ALJ De Steno properly found that Plaintiff had not engaged in SGA since February 3, 2009, the application date for Plaintiff's SSIB request. (R. 17.)

At step two, ALJ De Steno properly found that Plaintiff suffered from the following severe impairments: obesity, osteoporosis, lumbar disc disease, and radiculopathy. (*Id*.) In making this finding, ALJ De Steno considered Plaintiff's testimony and the medical record as a whole. (R. 17–20.) ALJ De Steno cited to objective medical evidence in the record supporting the finding that Plaintiff has the severe impairment of osteoporosis complicated by obesity as

well as a spine/back impairment. (R. 18.) ALJ De Steno correctly determined that there was insufficient objective evidence to "establish severe impairments involving asthma, heel spurs, or arthritis." (*Id.*) The evidence shows that Plaintiff exhibited a full range of neck and shoulder movements, and has no restrictions of wrist or finger movements. (*Id.*) In response to Plaintiff's psychiatric disability claims, ALJ De Steno properly concluded that the "objective medical evidence . . . fails to establish a severe mental impairment." (R. 19.) Although there is conflicting medical evidence between Dr. Arrington's findings and the State Agency consultant, Dr. Huber, ALJ De Steno is within his discretion to find in accordance with Dr. Huber. (*Id.*) In making this finding, ALJ De Steno considered the four broad functional areas set out in the disability regulations for evaluating mental disorders and in section 12.00C of the Listing Impairments (20 C.F.R., Part 404, Subpart P, Appendix 1). (*Id.*) First, ALJ De Steno correctly found that Plaintiff has only mild limitation in activities of daily living. (*Id.*) She cooks breakfast and dinner, takes care of household chores, and cares for her daughter on a daily basis. (*Id.*) Second, ALJ De Steno properly found that Plaintiff has mild limitation in social functioning. (*Id.*) Although Plaintiff is less social than in the past, the evidence shows that she is close with her daughter and spends time with others via the telephone and computer, and that she regularly attends church. (R. 19–20.) Third, ALJ De Steno cited the evidence from the medical record to conclude that Plaintiff has only mild limitation in concentration, persistence or pace. (R. 20.) Fourth, there is no evidence that Plaintiff has experienced any episodes of decompensation. (*Id.*)

Based on the objective medical evidence cited and evaluated by ALJ De Steno, he correctly determined that Plaintiff's mental impairment is not severe because it causes no more than mild limitations in the first three functional areas and no episodes of decompensation. (*Id.*)

At step three, ALJ De Steno properly determined that Plaintiff's impairments did not equal or exceed the impairments included in the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926.) (*Id*.) ALJ De Steno properly found that Plaintiff's impairments did not meet or equal the criteria of listing 1.04. (*Id*.) In support of his finding, ALJ De Steno correctly stated:

> the evidence does not show nerve root compression characterized by significant limitation of the motion of the spine, motor loss, sensory or reflex loss, or positive straight-leg raising; spinal arachnoiditis confirmed by an operative note, tissue biopsy or medical imaging, or; lumbar spinal stenosis resulting in chronic non-radicular pain and the inability to ambulate effectively.

(*Id*.) Next, ALJ De Steno correctly considered Plaintiff's obesity in the context of the overall record evidence in determining that it did not meet the requisite qualifications of Social Security Regulation ("SSR") 02-1p. (R. 20–21.)

Before undergoing the analysis in step four, ALJ De Steno determined Plaintiff's RFC. (R. 21–22.) ALJ De Steno properly found that since Plaintiff's alleged involvement in a motor vehicle accident in September 2010, she has had the RFC for "lifting and carrying objects weighing up to [ten] pounds; sitting up to six hours, and standing and walking up to two hours in an eight-hour day; and the full range of sedentary work." (R. 21.) Furthermore, ALJ De Steno determined that Plaintiff "has not had any non-exertional limitations." (*Id*.) In making this determination, ALJ De Steno considered all of Plaintiff's symptoms to the extent they could accepted as consistent with the objective medical evidence and all other evidence based on the requirements of 20 C.F.R. 416.929 and SSRs 96-4p and 96-7p. (*Id*.) ALJ De Steno also considered opinion evidence in accordance with the requirements of 20 C.F.R. 416.927 and SSRs 96-2p, 96-5p, 96-6p and 06-3p. (*Id*.) ALJ De Steno cited to Plaintiff's testimony, various doctor treatment notes, the residual functional capacity assessment and MRI records. (R. 21–

22.) ALJ De Steno appropriately weighed the value of the testimony and medical records before him. (*Id*.) In light of the substantial evidence reviewed by ALJ De Steno, this Court finds that ALJ De Steno properly determined Plaintiff's RFC.

At step four, ALJ De Steno properly found that Plaintiff has no past relevant work under 20 C.F.R. 416.965 because she has not worked since 1990. (R. 22.)

Lastly, at step five, ALJ De Steno properly found that Plaintiff is "not disabled" as directed by Medical Vocational Rules ("Medical Rules") 202.17, 201.24, and, therefore, she is able to perform work that exists in significant numbers in the national economy. (R. 22–23.) ALJ De Steno considered Plaintiff's age, education, work experience and RFC. (*Id*.) No vocational expert testimony was needed in light of ALJ De Steno's finding that Plaintiff does not have any non-exertional limitations and that she can currently perform the full range of sedentary work. (R. 21–22.) For these reasons, ALJ De Steno's conclusion that Plaintiff is not disabled under the Medical Rules is justified. (R. 22–23.)

## **CONCLUSION**

Because this Court finds that ALJ De Steno's decision is supported by substantial evidence in the record, the Commissioner's determination is **AFFIRMED.**

s/ *Susan D. Wigenton*
**SUSAN D. WIGENTON**
**UNITED STATES DISTRICT JUDGE**

Orig: Clerk
cc: Parties